We have four argued cases this morning. The first is No. 23-1827, Harris v. McDonough. Mr. DeHock, please. Good morning. May it please the Court. Kenny DeHock is for appellant. On behalf of Mrs. Harris, I want to thank this Court for the opportunity to present her appeal. For this Court's appeal, I'd ask the Court to reiterate the rule of law for determining the scope of a claim. Mrs. Harris challenges the Veterans' Court's decision as it relates only to the rules of law it applied when it affirmed the VA's determination with respect to the scope of the 2013 claim of her late husband. The undisputed facts show that before the Board first reviewed the 2013 claim for increased ratings, Mr. Harris formally requested a TDIU rating for his service-connected disabilities. Okay, that happened in 2018, right? That's correct, Your Honor. Okay. So why does that claim for an increased rating, which is what TDIU is, relate back to 2013? There's a specific fact finding, both by the Board and approved by the Veterans' Court, that the record didn't contain evidence of unemployability sufficient to raise a TDIU claim before 2018. That's correct, Your Honor. And that's the issue that we're challenging, was that the Board and the Veterans' Court both misapplied the law by looking for a request prior to 2018, as opposed to looking at all of the evidence of record that has been assembled prior to the decision. Under 3.156B, and this Court's precedent, as well as Rice v. Shinseki, which of course this Court is not bound by but the Veterans' Court is, the issue of a total of a TDIU rating when explicitly raised as part of an appeal relates back to the then pending claim. Isn't Rice only relevant to an initial disability rating rather than an increased rating claim? It does not, Your Honor. And the reason for that is that the new material evidence regulation, 3.156B, which in 2018, we recognize that this is now within the AMA, but when the evidence was submitted in 2018, it was still within the legacy and that regulation applied. That regulation does not differentiate between an initial rating claim and an increased rating claim. It just says claim. And when the evidence is new material or potentially new material, under this Court's precedent, going back to Bond as one of the earlier cases, the VA has an obligation under that regulation to assess whether it is new material to that claim. You split off your TDIU claim from the rest of your 2013 claim, assuming they're all the same claim, when you sought higher level review, right, in 2020? Therefore, this TDIU appeal is within the Appeals Modernization Act tract of appeals and it's not part of the legacy system of appeals anymore. Isn't that right? It is today, Your Honor. However, when the evidence was submitted, then applicable leg was 3.156B. But how can 3.156B, which as I understand applies to legacy claims, have relevance here when you jumped off of the legacy system and moved this TDIU request into the AMA system? Because when the evidence was submitted in 2018, Your Honor, the law required that that evidence be treated as if it were submitted by the 2013 claim. Right, but you have the choice of whether to maintain a legacy system appeal or elect to enter the Appeals Modernization Act appeal system, right? That's correct, Your Honor. So once you make that choice, then doesn't the law for the appeal, for the AMA type appeals apply to your appeal? It does going forward, Your Honor, but looking backwards, we look at the law at the time that the action occurred. And when that action occurred, 3.156B was in effect and required the VA to treat that evidence submitted in 2018 as if it were submitted with the then pending 2013 claim. My real problem here is that before the Veterans Court, you didn't make the argument that you're now making to this court. As I understand what you argued to the Veterans Court or your prior counsel, it was an argument that a TDIU request had been implicitly raised before 2018 because there was cogent evidence of unemployability in the record. And there was no argument to the Veterans Court that a TDIU request made while a claim stream is open makes the TDIU request part and parcel of that original filed claim. Am I understanding what was argued to the Veterans Court correctly? You are, Your Honor. However, I have two responses to that. Number one is to the board. The veteran argued that Rice v. Shinseki controls and the underlying basis of Rice v. Shinseki was 3.156B. But for whatever reason, counsel chose to take a different legal strategy, make a different legal argument to the Veterans Court than what was made to the board. And so I don't understand how this court can claim that the Veterans Court committed some type of error when the Veterans Court did nothing more than or needed to do anything more than actually address the argument that was made to it. And my second response, Your Honor, is that the Veterans Court is always required to apply the law. And when they made this decision, when they affirmed the board's determination that there was no cogent evidence of unemployability, it misapplied the law because Mr. Harris had specifically requested a TDIU rating. The cogent evidence of unemployability under Comer, which is the case where that language comes from, arises only when the veteran does not specifically request a TDIU rating. So the law looks at, requires under Wilberson and Comer for the VA to sympathetically develop the claim to its optimum. And part of that is to review the entire record. And if the veteran affirmatively requests the TDIU rating, they're done. Why was the argument that you're making now to us made to the Veterans Court? Do you know? I do not know, Your Honor. I cannot speak to that. My guess is that they were responding to what the board said, in that there was no cogent evidence of unemployability, as opposed to the response which we're making here is that the law didn't require that. The law has only required that the issue... What is your best argument for why the argument you're making now in appeal has not been forfeited? Well, as we pointed out in our reply brief, Your Honor, under the amended 7292, this court has case jurisdiction. I don't think there's any doubt that this falls within that. Maybe I'm misspeaking there, but when we're looking at why it wasn't forfeited, number one is that the Veterans Court, again, was required to correctly apply the law. And the law, when it made its decision, included Rice, which was binding on that court. It included Murphy from this court, which discusses the reasonable expectations when looking at the scope of a claim. That sounds as though you're saying there can't be a forfeiture in a veteran's case. And that's not the law. We've held in the past that there can be forfeiture for failure to raise arguments. I believe, the way that I read Morgan, Your Honor, that the decision is what, or rather the case, is where this court derives its jurisdiction. And I recognize that Morgan does also go into whether it would be prudential to address these arguments. And I think that this specifically is distinguishable from the issue in Morgan. Morgan pointed out that this was kind of a new argument that hadn't been addressed by any other court. But here, this is well-established, longstanding case law for 20 years from Rice. Bond has been around for over 10 years. And Murphy has been in play for a couple of years now. I don't understand, coming back to the merits, Your Honor. I don't understand how your argument is consistent with Gaston, where we held that a TDIU claim is a claim for an increased rating, and that the rules for increased ratings mean that you can only go back for one year if the condition justifying the increased rating occurred during that one-year period. So it seems to me that Gaston is potentially on point and is a rejection of your theory that you can go all the way back to 2013. Your Honor, Gaston does apply, obviously. It is the law. But it first requires us to ascertain which, what is the date of claim. And here, particularly Bond, and I didn't discuss Bond in my briefing, but as I was preparing for this, we talked about 3.156B and its application. But Bond is very similar on the facts, where a TDIU rating was raised, like in Rice, after a rating increase had been denied. And this court held specifically that it can be both, that it can be new and material evidence, even though the regional office treats it as a new claim. And when we already... Can you refer, though, to Judge Dyke's question about how you distinguish Gaston? So, Your Honor, Gaston is... You agree, first of all, that a TDIU claim is a claim for an increased rating, right? It can be, Your Honor. That's what... Yes. And in this case, it is. It is a request. It is partly a request for an increased rating. So how, under Gaston, can you assert that you can get an effective date that goes back to 2013? It seems to be directly inconsistent with Gaston. Well, it's not, Your Honor, because, again, the 2013 claim was pending before the board. While it was pending, Mr. Harris then told the board, yes, you have these claims pending. I'm asking for a higher rating. And now I'm also asking for the highest rating, which is a TDIU rating. I don't understand what you're saying. I mean, you're asking for an effective date many years earlier than the time in which the claim was made or the evidence of record created a TDIU claim. You're trying to go way back to having an earlier effective date. And Gaston says you can't do that. And my response to that, Your Honor, is that the 2018 submission was not a claim. It was evidence submitted as part of the 2013 claim where he was already asking for a higher rating. But I thought your claim was a claim for an increased rating a moment ago. Well, what I said, Your Honor, was that it can be an increased rating. And in this case, it was part of his increased rating, which had started in 2013. And that's what Rice was about. That's what Bond was about. I do not understand what you're saying about Gaston or how you can, under Gaston, how you can go back to 2013. I don't get it. Well, I think the response, Your Honor, is that the evidence of unemployability was simply showing the VA that, in addition to looking at higher scheduler ratings, we also have to look at TDIU ratings. That's what Comer was talking about. That's what Roberson was talking about. That TDIU can be raised with cogent evidence of unemployability in Comer, or it can be raised by affirmatively requesting it from the veteran. And that's what Mr. Harris did here. I'm about out of time, so if there are no more questions, I will reserve the rest. Thank you, Your Honor. Mr. Carhart. Go ahead. May it please the Court. The Veterans Court's opinion should be affirmed because, first, Mrs. Harris has waived the argument she raises before this Court by failing to raise it before the Veterans Court. And, second, the Veterans Court did not err when it awarded an effective date of April 16, 2018, for Mrs. Harris' TDIU rating. So, first, on the waiver point, I'll respond to Mr. Carhart. I'll respond to Mr. DeHakos' argument about jurisdiction. I think he's conflating jurisdiction with waiver. This Court, as Judge Ike suggested, has recognized that waiver does apply in veterans' cases. If a veteran doesn't raise an argument, that's a separate question from whether the Court has jurisdiction. Even though the Court has jurisdiction, there's still the question of whether the issue was raised before the Veterans Court. Here it wasn't. And here you have a situation where not only was the argument not raised, but Mrs. Harris asked the Veterans Court to do something very specific, which is look at the evidence in the record and assess whether it constituted cogent evidence of unemployability. The Veterans Court said the Board did that and didn't err in doing so. And now Mrs. Harris is raising a completely different argument on appeal. Is it correct that Mr. Harris was not represented by an attorney until 2018? Is that correct? He was represented by an attorney in 2018. But not until 2018? Before 2018, he was represented by a representative through a veterans' service organization. So I think, as far as I know, it's true that the attorney representation started in 2018. But at the Veterans Court, Mrs. Harris was represented. So the issue we're talking about now was when she was represented and relates to a period when she was represented. If there are no further questions about waiver, I'll move to the merits briefly. So here there's a factual finding that there's no cogent evidence of unemployability prior to 2018. And that's dispositive in our view. With respect to this argument about 3.156B, Mr. DeHakos has developed the argument a little further than he did in his briefs. Ultimately, though, the Veterans Court and the board did look at this evidence, of this newly submitted evidence. It assessed the claim to have been submitted, and it awarded TDIU, or the OR actually awarded TDIU. So this is not a case like Comer or Robeson, where the VA and the board and the Veterans Court doesn't consider newly submitted evidence. It's a case where the Veterans Court and the board considered the evidence and then applied the appropriate regulatory provisions related to effective dates, which aren't even raised in Mrs. Harris's opening brief before this court. But in Comer, didn't we say that TDIU requests are not a freestanding claim? They shouldn't be looked at in that manner? They're a claim for increase. I think that's right. But once we say it's not a freestanding claim, then we have to characterize, well, then what is a TDIU request? And then why wouldn't the logical conclusion be that a TDIU request, while an initial claim is open, makes the TDIU request part and parcel of the initial claim? So first, that would be an extension of Rice. And I think that's what the Veterans Court and Rice said that with respect to initial claims. With respect to what? With respect to initial claims. Yeah. So if there's an initial service connection claim, and then a TDIU claim comes in at a later, or a TDIU assertion comes in at a later date, it's part and parcel. That doesn't resolve the effect of... Does the government agree with that? We haven't taken issue with that in any setting. Does that mean you agree with it? We don't disagree with that. Oh, okay. We don't disagree with... What does your VA manual say about it? Pardon? Your VA manual. The VA manual cites Rice. Okay. I don't know that it specifically... So the VA agrees with it? The VA does not, yeah, doesn't have any issues with Rice as applied to initial rating decisions. This would require an extension of Rice to a different context. This is the increased rating situation. Right. This is an increased rating situation, which, as Judge Dykes' question suggested, is governed by Gaston. And there's a good reason that, as Rice notes, Rice is very explicit in saying increased ratings are resolved by, excuse me, increased rating applications are governed by different regulatory provisions. So Rice didn't purport to apply to the increased situation. Gaston did. And there's a good reason for that, because a TDIU increase theory coming in at a later stage doesn't necessarily give notice that a TDIU assertion had been made at an earlier date. Ultimately, though, this can probably be resolved in some other case where it's clearly presented to the Veterans Court, because here you have a factual finding that there's no cogent evidence of unemployability earlier than 2018. And in that situation, there's no basis to say that the claimant is entitled to TDIU for a period in which they did not submit evidence of unemployability. That's dispositive. Could you try to describe what is the principal distinction between an increased rating application claim and an initial claim, and why we would treat one different from the other when it comes to a subsequently requested TDIU? So, again, this is beyond the scope of what the court says. I'm trying to understand your point of view that there's an important distinction between those two contexts. And right now, I don't understand. So what 3.4000... So 3.400, parentheses O, is the governing regulatory provision. And that's what would apply, and that's what applies in the case of an increase. So the governing provision in subsection 2, earliest date as of which... So for disability compensation, earliest date as of which it is factually ascertainable based on all evidence of record that an increase in disability had occurred if a complete claim or intent to file a claim was received within one year from such date, otherwise date of receipt of claim. So this seems to presuppose a situation where a claim is filed... Excuse me, an increase occurs and a claim is filed, and the increase happens after the date of receipt of claim. So there would be an anomalous situation under this regulation if Rice applied to a situation where the... As I think Mr. Guajacoa is suggesting here, you had a claim in 2013 and then an increase occurring at some point after that claim, say 2015. That would seem to suggest that the date of claim should be... Excuse me, the date of claim should be controlling under this regulation such the TDIU claim would relate back to 2013 if you read this regulation literally, which would seem to be anomalous because you get TDIU for a period in which there is no evidence of unemployability. That's a somewhat nuanced argument, I acknowledge. We would have developed it further if this argument had been specifically raised before this court. Ultimately, though, it's in a situation like this where there's no cogent evidence of unemployability prior to the formal claim for TDIU, there's no reason to have to wade into that. What should we do about the other side's argument about 3.156B given that the TDIU request entered the AMA appeal system? So our submission is that the VA did... What we argued was that the VA did comply with 3.56B. So we didn't contest that they had to. We said they actually did because they considered all evidence of record throughout the process. So even before the election, the RO was the entity that awarded TDIU. So at that point, the VA itself, before the veterans court, looked at all the evidence of record and said, yes, you're entitled to TDIU, it's just that it doesn't date back before 2018. If there are no further questions, we ask the court. Okay. Thank you, Mr. Carhart. Mr. DeAquaz, you have a little over two minutes. Thank you, Your Honor. Judge Dyck, I'd like... I'm sorry, Judge Chen, I'd like to start by addressing the questions that you had with respect to the distinction between an increase in initial rating. From Rice, we see that the veterans court held, whether expressly raised by a veteran or reasonably raised by the record, TDIU is not a separate claim, but involves an attempt to obtain an appropriate rating for a disability or disabilities, either as part of the initial adjudication or if a disability upon which entitlement to TDIU is based has already been found to be service-connected as part of a claim for increased compensation. Now, the distinction that the government talked about with respect to 3.400 with an initial versus an increased rating claim is appropriate, but we first have to determine which... identify the claim that we're looking at. The government concedes that they did consider the evidence under 3.156B, but that regulation also requires not only the VA to consider the evidence, but to treat it as if it were... treat it as if it were filed with the then-pending claim, which the VA did not do here. They treated it as a new claim, violating Rice, and I just want to emphasize again that once the veteran obtained representation, the attorney wrote the board, pointed specifically to Rice, and said, this request for a TDIU rating is to be considered as part of the 2013 claim that you, the board, are looking at. And this is what Murphy talked about from this court when reviewing the scope of claim, the reasonable expectations of the claimant, once he got representation, competent attorney, they told the VA, this now includes a request for TDIU, and that's perfectly consistent with Rice. In Roberson, this court confirmed that each informal claim for a rating increase included a claim for the highest possible... highest rating possible, all the way up to 100%, and that led to its determination that TDIU was part of that. And then going back to Comer, there's no reason to... Well, Comer, again, was with respect to raising the issue of TDIU, again, either informally or implicitly with cogent evidence, or explicitly as Rice, as Bond, as Mr. Harris did. And we've asked that this court reverse the Veterans Court and find that the scope of the 2013 claim included it, or at the very least, remand to correctly apply the law. Okay. Thank you. Thank you. Thank both counsel and cases submitted.